<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| TAMIE MADDOX,<br><br>　　　　*Plaintiff*,<br><br>　　　　　v.<br><br>CONOPCO, INC., d/b/a UNILEVER HOME &<br>PERSONAL CARE USA,<br><br>　　　　*Defendant*. | Civil Action No. 23-293<br><br>**OPINION**<br><br>May 12, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendant Conopco, Inc.'s ("Defendant"), Motion to Preclude Plaintiff Tamie Maddox's ("Plaintiff") medical expert from testifying at trial (ECF 44, "Daubert Motion" or "Daubert Mot."), and Defendant's Motion for Summary Judgment. (ECF 46, "MSJ.")  Plaintiff opposed both motions (ECF 48, "Daubert Opposition" or "Daubert Opp."; ECF 49, "Opp. to MSJ"), and Defendant replied in support of both motions (ECF 52, "Daubert Reply"; ECF 50, "MSJ Reply.")  The Court has decided these motions upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons stated below, Defendant's Daubert Motion is **GRANTED** and Defendant's Motion for Summary Judgment is **GRANTED.**

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

On January 19, 2023, Plaintiff Tamie Maddox filed her Complaint against Defendant Conopco, Inc. d/b/a Unilever Home & Personal Care USA, alleging that Defendant, a New York corporation with its principal place of business located at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, caused Plaintiff to suffer from hair loss after she used Defendant's TRESemmé shampoo containing DMDM hydantoin ("DMDM"). (ECF 1, Compl. ¶¶ 1, 11.) Plaintiff alleges that the DMDM preservative used in Defendant's products including the TRESemmé Keratin Smooth Shampoo is a chemical that releases a carcinogen known as formaldehyde, which has long been associated with causing hair loss, thinning hair, dermatitis, and other adverse scalp reactions, and has been the subject of numerous complaints and various lawsuits. (*Id.* ¶¶ 2, 5-6.)

Plaintiff alleges that Defendant promoted and sold TRESemmé products, including the TRESemmé Keratin Smooth Shampoo, without any warnings disclosing to consumers the risk of DMDM or that the TRESemmé products may cause hair loss, thinning hair, and scalp irritation when used properly. (*Id.* ¶¶ 11, 19-21.) Plaintiff also alleges that Defendant used and may still use DMDM in certain products despite the existence of comparable and affordable alternatives, and despite Defendant's ability to reduce the amount of DMDM in its products. (*Id.* ¶ 31.) Additionally, Plaintiff alleges that Defendant has known of the harms associated with DMDM for approximately a decade based on prior litigation involving Defendant and ongoing consumer

---

[1] The facts and procedural history are drawn from the Complaint (ECF 1, "Compl."), Defendants' Motion for Summary Judgment (ECF 46, MSJ), Plaintiff's Opposition (ECF 49, Opp. to MSJ), both parties' submissions regarding material facts, and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

complaints concerning hair loss following the use of Defendant's products containing DMDM. (*Id.* ¶¶ 34-36.)

Plaintiff alleges that in 2021, she purchased and began using TRESemmé products containing DMDM, and started experiencing hair loss, thinning hair, and scalp irritation. (*Id.* ¶¶ 42-43.) Plaintiff alleges that since she became aware of TRESemmé products being associated with hair loss, Plaintiff stopped using TRESemmé products containing DMDM and contends that the rate of her hair loss had slowed and she started experiencing regrowth of her hair. (*Id.* ¶ 45.)

Plaintiff brings four separate claims against Defendant: Count I for strict product liability as to an alleged manufacturing defect; Count II for strict product liability as to an alleged design defect; Count III for strict product liability for failure to provide an adequate warning; and Count IV for negligence. (*Id.* ¶¶ 46-80.) Defendants filed an Answer to the Complaint on March 31, 2023. (ECF 9.)

The parties engaged in discovery and retained experts. At issue here is the expert report and testimony of Plaintiff's medical expert, dermatologist Dr. Marc Serota. (ECF 46-3, Ex. A, "Serota Report"; ECF 46-3, Ex. B, "Serota Deposition.") Defendant moved to preclude Dr. Serota from testifying at trial and filed an accompanying brief on June 30, 2025. (Daubert Mot.; ECF 45.) Defendant also filed a Motion for Summary Judgment and accompanying brief on June 30, 2025. (MSJ; ECF 47.) Plaintiff filed her Oppositions to Defendant's Daubert Motion and Motion for Summary Judgment on August 28, 2025. (Opp. to Daubert; Opp to MSJ.) Defendant filed a Reply in support of its Motion for Summary Judgment and Daubert Motion on September 29, 2025. (MSJ Reply; Daubert Reply.)

## II.   MOTION TO PRECLUDE EXPERT TESTIMONY

### a.  Legal Standard

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc*, the Supreme Court held that district courts must act as gatekeepers to ensure proffered expert scientific testimony meets the requirements of Rule 702.  *See* 509 U.S. 579, 589 (1993).  And in *Kumho Tire Co. v. Carmichael*, the Court held that "this basic gatekeeping obligation" "applies to all expert testimony," not just "scientific" testimony.  526 U.S. 137, 147 (1999).

"Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). First, the proffered witness must be a qualified expert, meaning that the witness must possess specialized expertise.  *Feit v. Great-West Life & Annuity Ins. Co.*, 460 F. Supp. 2d 632, 636 (D.N.J. 2006).  Second, the testimony must be reliable.  This requirement has been interpreted to mean that an "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." *Id.*  (quoting *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 742 (3d

4

Cir. 1994), *cert. denied*, 513 U.S. 1190 (1995)). Thus, "[c]ourts need not admit bare conclusions or mere assumptions proffered under the guise of 'expert opinions[,]'" *id.* at 637, and "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, (1997). Third, the expert's testimony must "fit," meaning that the testimony "must be relevant for the purposes of the case and must assist the trier of fact." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *Schneider v. Fried*, 320 F.3d 396, 405 (3d Cir. 2003)).

An expert who renders an opinion based on extrinsic factual assumptions "cannot be said to 'assist the trier of fact,' as Rule 702 requires." *Elcock*, 233 F.3d at 756 n.13. Consequently, "[t]his type of an opinion misleads the fact-finder and arguably does not comply with the 'fit' requirement" of Rule 702. *Id.* "A court 'must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used.'" *McGarrigle v. Mercury Marine*, 838 F. Supp. 2d 282, 293 (D.N.J. 2011) (citing *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000)). The proponent of expert testimony must establish the admissibility of the expert's opinion by a preponderance of the evidence. *In re Paoli*, 35 F.3d at 744.

### b. Analysis

Defendant argues that Plaintiff cannot meet her burden of establishing that medical expert Dr. Marc Serota's opinion that Defendant's product caused her hair loss due to an allergic reaction to DMDM is reliable. (*See generally* Daubert Mot.) Specifically, Defendant argues that Dr. Serota formed his opinion without conducting procedures normally performed by dermatologists outside the litigation context. (*Id.* at 18-22.) Defendant also contends that Dr. Serota performed no

diagnostic tests mandated by Third Circuit law (*id*. at 22-25), and that he failed to rule out other obvious potential causes of Plaintiff's alleged hair loss (*id*. at 25-26). Finally, Defendant asserts that Dr. Serota's theory in this case lacks scientific support (*id*. at 26-27) and that he failed to establish that DMDM or other chemicals could have caused the alleged hair loss at the levels of concentration these chemicals are found in Defendant's products. (*Id*. at 27-28.) Defendant notes that Plaintiff has not consulted with a doctor in several years, that she has been uninsured since 1996, and that she has never been tested for an allergy to DMDM. (*Id*. at 5.)

Plaintiff argues that Dr. Serota used sufficient diagnostic techniques in forming his opinion. (Opp. to Daubert at 21-26.) Plaintiff also argues that Defendant's arguments go to the weight of Dr. Serota's testimony rather than its admissibility. (*Id.* at 27-36.)

Under the Third Circuit's precedents, Dr. Serota's opinion cannot be considered reliable and he must be precluded from testifying at trial. Dr. Serota testifies that he essentially relied entirely on Plaintiff's self-report of her symptoms and some photographs of the affected areas on her body to come to his opinion. (*See generally* Serota Report.) The Third Circuit has made clear that "a physician who evaluates a patient in preparation for litigation should seek more than a patient's self-report of symptoms or illness and hence should either examine the patient or review the patient's medical records[.]" *In re Paoli*, 35 F.3d at 762. In this case, because Plaintiff effectively lacked any significant medical records or other medical history that could have informed Dr. Serota's opinion as to her specific condition, Dr. Serota would have had to perform some physical examination or laboratory tests to credibly determine whether Plaintiff does in fact have an allergy to DMDM. *Id.* ("While courts allow reliance on patient statements, they are based upon a personal history corroborated by medical records, a physical examination and medical

6

tests.")  He did not do that here, and as a result, the Court cannot credit his testimony and allow him to present his opinions to a jury as those of a properly informed expert.

Accordingly, Defendant's Daubert Motion is **GRANTED**.

### III.   MOTION FOR SUMMARY JUDGMENT

#### a.  Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact [and] the moving party is entitled to a judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Id*. Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

### b.  Analysis[2]

Defendant argues that, since her expert is precluded from testifying, Plaintiff cannot show that DMDM caused her hair loss, and her claims therefore fail as a matter of law. (*See generally* MSJ.) In New Jersey "[c]ausation is a fundamental requisite for establishing any product-liability action." *Coffman v. Keene Corp.*, 133 N.J. 581, 594 (1993). There are two types of causation that a plaintiff must show to prevail: product-defect causation and medical causation. *Whelan v. Armstrong Int'l Inc.*, 242 N.J. 311, 333 (2020). "Medical causation requires proof of an exposure of sufficient frequency, with a regularity of contact, and with the product in close proximity to the plaintiff." *Id*. (internal quotations omitted). "Generally, expert testimony is needed to prove

---

[2] The parties made their arguments under New Jersey law, so the Court applies New Jersey law here.

causation of a medical condition." *Feit v. Great W. Life & Annuity Ins. Co.*, 271 F. App'x 246, 252 (3d Cir. 2008) (citing *J.W. v. L.R.*, 325 N.J. Super. 543 (1999)).  In this case, Plaintiff's expert's testimony has been deemed inadmissible, so it is therefore impossible for Plaintiff to prove medical causation at this stage.  Apart from this, no genuine disputes of material fact remain that counsel in favor of denying Defendant's Motion for Summary Judgment.  As such, Defendant's Motion for Summary Judgment is **GRANTED**.

IV.     **CONCLUSION**

For the reasons stated herein, Defendant's Daubert Motion is **GRANTED** and Defendant's Motion for Summary Judgment is **GRANTED**.  An appropriate order follows.

*/s/ Jamel K. Semper*
**Hon. Jamel K. Semper**
**United States District Judge**

Orig:   Clerk
cc:     Michael A. Hammer, U.S.M.J.
        Parties